Thank you. Good morning, Your Honors. Opposing counsel, may it please the Court. This appeal concerns the ALJ's residual functional capacity finding as well as the jobs identified at Step 5. In this case, the residual functional capacity omits a limitation on reading, writing, and money exchange that was proposed by state agency consultants in which the judge gave great weight. There's no explanation in the judge's decision for why that limitation was omitted, and we believe that that limitation is very likely disabling, but that's not really the question before the Court. The question before the Court is, first of all, was it error for the judge to exclude that limitation, how that limitation affects the Step 5 jobs, and whether any remaining jobs are adequately rebutted by the evidence that we submitted. There's a bit of an asterisk on that. We submitted our evidence to the ALJ. The ALJ declined to admit that evidence. We referenced that evidence in our appeals counsel memo, but when we got the excerpts of record from Office of General Counsel, that evidence was not in the excerpts of record, so we were forced to submit it with our district court briefs. A copy is in the excerpts to the Court. So, first up. Counsel, may I ask you, I'm sorry, we don't have a lot of time, but I just wanted to ask you, weren't there still, even if there was error in not including the reading and writing, a lack of reading and writing skills, weren't there still jobs that did not require those skills? There were. There were two jobs identified by the vocational expert that don't clearly involve reading, writing, or money exchange, those being small products assembler and electronics worker. Well, why wouldn't that render the error harmless? Because our rebuttal evidence shows that the numbers given by the vocational expert are rather implausible. So, first of all, the vocational expert testified that there are 90,000 small products assemblers and just under 200,000 electronics workers in the national economy. The expert said that those numbers were derived from United Staff Publishing, which in turn gets us numbers from the Occupational Employment System, or OES. The problem is that according to the U.S. Department of Labor, those two jobs are both in the same OES group, and that group has only 230,000 positions spread among 1,590 different occupations. But, counsel, doesn't the record reflect that the V.E. didn't just take those numbers but also took those numbers and then added in computations based on experience? Well, maybe he did, but where would those numbers come from? He's telling us that these two jobs represent more than the total for all of the industry that includes those two jobs as well as more than 1,500 other occupations. When someone tells you 2 plus 2 is 5, you don't need to understand their methods to know they're wrong. Well, the problem for me is there is no indication of which information Job Browser Pro took from the OES or how that information was harvested. I will be the first to admit that I don't entirely understand Job Browser Pro's process. However, as this Court recognized in White v. Kijikazi last year, it is a software program frequently relied on by vocational experts in social security cases. But not solely. If the vocational expert just gave the job browser numbers, that would be one thing, but that's not what the vocational expert did in this case. No, it's not what he did. But I don't think—we did also rebut his methodology because, as I said, according to the U.S. Department of Labor, this OES group, which composes over 1,500 occupations, has a total of 230,000 workers. Even if there were some other similar occupations that the expert drew in, they would still be in that same occupational employment classification, the same OES group, and that group has only 230,000 jobs. His testimony identifies 290,000. That's impossible. It would be helpful if you had a vocational expert on the other side that gave this testimony. I'm not sure that we can extrapolate just from the numbers that that saw. Well, I think given the non-adversarial nature of Social Security proceedings, it's a lot to ask that Social Security claimants bring an expert of their own. That said, that is a valid critique. If they were just making numbers up, certainly I think that would be a very valid critique. We're relying on a program that, as I said, is frequently relied on by experts in Social Security hearings. You're asking us to decide between the vocational expert and the evidence that you put in, and I don't know that that's a task that we're equipped to do or that we're called upon to do in our review. Just speaking for myself. With respect, Your Honor, I don't think I'm asking you to make that decision. I'm asking you to find that the Social Security Administration has to address our evidence, which they not only didn't address but didn't even exhibit. Social Security relied on an expert that we've impeached in two different ways. First, by showing his methodology makes no sense, given that it produces a number that's greater than the total number of that industry, according to the U.S. Department of Labor, which I think is presumptively reliable. And then second, we submitted rebuttal evidence showing a much smaller number. At a minimum, Social Security should have been obligated to address that evidence. So is your argument that we should consider your evidence and question the V.E.'s testimony, or is your argument that the ALJ erred by not even admitting and considering your evidence at the hearing? I think both. First of all, definitely the judge erred by not even addressing and considering the evidence. But second of all, even if we imagine that the judge had admitted the evidence and somehow addressed it, we have evidence from the vocational expert which is on its face implausible for the reasons stated regarding the number of jobs in that group. And if that evidence isn't reliable, then there's only one set of data in the record, assuming our evidence was admitted to the record, that with only one set of data to look from, there's no substantial evidence supporting the judge's position. All right. Thank you. If there's no further questions, I'd like to reserve time for rebuttal. Absolutely. Let's hear from the government. Good morning. May it please the Court, my name is Christopher Brackett. I'm here on behalf of the Commissioner of Social Security. I ask that you uphold the District Court's judgment, affirm the ALJ's decision. What this comes down to is whether there's a categorical rule that evidence from this product called Job Browser Pro, submitted, produced and maintained by a company called Skiltran, automatically counts as significant improbative evidence. Our position is that there's no place for such a categorical rule in all Social Security cases. The Supreme Court in Bistek v. Berryhill explained that categorical rules are inappropriate when it's a question of substantial evidence. This court has endorsed that approach in cases, including the case White v. Kijikazi, that the claimant here relies upon. And this court also, in the case of Kilpatrick v. Kijikazi, took that same approach in reviewing evidence submitted by a claimant to rebut a vocational expert's testimony and assessing all the factors of that evidence to conclude that it wasn't significant or probative. When it comes to the White case, White was really building off of a case called Buck v. Berryhill. Both of those cases involve evidence submitted after the hearing or after the decision attempting to rebut the vocational expert testimony. And in both cases, the evidence submitted addressed the source of the vocational expert's testimony. So those cases really stand for the principle that if a V.E., a vocational expert, says that, hey, this data source says that there are this many jobs, the claimant can certainly say, no, it doesn't, submit their own printout of that same evidence, that same program, that same source, to show that it isn't back bar lower. In this case, we don't have that. The V.E. here did not rely on the same source that the claimant later submitted. The V.E., an expert with four decades of experience in this field, an expert whose resume is in the file, who the claimant through her attorney did not object to at the hearing, testified that he relied upon a different company's information, a company called U.S. Publishing. Now, both Skilltrain and U.S. Publishing draw data from government sources. That's true. But if you look at page 33 of the excerpts of record, the data sources listed there, and this is just for the assembler job, but it's the same for the other electronics worker job, indicate that Skilltrain uses their own proprietary and customer peer-reviewed model for weighing the evidence from the government sources. We don't know that that's the same, that it's better or worse than the source that the expert relied upon. So what we have here, if we're looking at this from a case-by-case basis, is that we have on the one side an impartial, experienced, vocational expert that there was no objection to, who relied upon a data source, and the claimant asked what source he relied upon. He said U.S. United Staff Publishing. The claimant had the opportunity to further probe that source through her attorney at the hearing, but instead of asking more information about the methodology, the reliability, or any other aspect of this evidence, the claimant's attorney dropped the matter completely and moved on to other issues and had the full opportunity to probe the sufficiency of the expert's testimony was available to the claimant. They did not do so. On the other side, what we have from the claimant is an attorney representing the claimant, not a vocational expert, doing their own research on the number of jobs available. They subscribe to a company's product, and they did their own research. We don't know if they did it correctly. We don't know if they used the same parameters that a vocational expert would have, and we don't know what experience or expertise they might have that could support the outcome that they reach. We simply do not have the level of quality and the level of reliability that the ALJ relied upon from the vocational expert. This did not reach the same level of significant and probative information that we saw in the case of White or Buck. In White and in Buck, the evidence submitted completely took the legs out from under the expert's testimony. It cut out the source. It would be the same as if the claimant submitted evidence suggesting that the expert's credentials were defective or that the expert were biased. It's any other way of impeaching that expert's testimony to cut out the source or to go after some other aspect. Here, we don't have that. We just have a wholly different source. This is the evidence that we say supports the finding of disability from the claimant. But on the other side, you have an expert. An expert's testimony is reliable, and an ALJ may rely upon it. If there are no further questions on this point from the court, I'll just point out that if the court does agree with the commissioner's position on the first issue regarding the RFC and the medical opinions, it does not need to reach the VE evidence issue because the claimant did not submit any rebuttal evidence regarding the job numbers for the marker position. If there are no questions from the court, then I will just ask that the court affirm the district court judgment, uphold the ALJ's decision as supported by substantial evidence. Thank you. Thank you, counsel. Rebuttal? Counsel, could you answer the statement that opposing counsel just made, that no rebuttal evidence was presented for the marker position? We did not rebut the numbers on the marker position because we believe, based on the job description as included in the briefs, that the job of marker requires at least reading and writing, which was precluded by that DDS limitation. The judge left that out. I would note that counsel advocated for affirming the district court's decision. The district court agreed with plaintiff that it was error for the judge to leave that limitation out, therefore agreed that it was error for the judge to rely on marker. The district court found that that error was harmless because of the other two jobs. So that is our position as far as marker is that it's ruled out by this limitation from the state agency consultants, which the ALJ gave no reason to rebut. I also would like to point out that while counsel is saying that we're looking for a categorical rule, that Job Browser Pro is significant and probative, the counterpoint from Social Security is seeking a categorical rule that we must follow exactly the methodology used by their vocational expert at the hearing. I'm sorry, not their expert, but a neutral expert at the hearing. What the cases say, though, in order to rebut it, the same methodology must be at issue. Respectfully, I think White casts some cloud on that. Yes, Buck said that it was the same evidence and that was important. Right. In White, the fact that it was purportedly the same evidence was more of a footnote after a paragraph talking about how Job Browser Pro is used extensively by Social Security experts in a variety of these hearings. Also, in BSTEC, the Ninth Circuit said that vocational experts don't have to tell us what their sources are. And if they don't have to tell us what their sources are, how can we possibly be expected to match them? But we know in this case what the source was. We do know in this case. Right. And in this case, we looked at their sources, which are this occupational employment data, and according to the U.S. Department of Labor — Who did that? You said we. Who is we? Well, first, the U.S. Department of Labor produces numbers for the occupational employment system. When you say we looked at, who are you saying looked at the numbers? I'm reasonably sure it was me, Your Honor. Okay. I just want to be clear that it's you and not, you know, someone who — I mean, it was three or four years ago. It might have been one of my associates, but I do run that department at our firm. I understand. Very likely it was me personally. For the record, I just wanted to know who specifically ran the numbers that you used to rebut the V.E. testimony. If you'd like, I can describe how that process works. No, thank you. I just wanted to know who did it. But here — I mean, in white, there's a unity of impeaching the vocational experts' numbers and also using their same source. I will readily admit that those are a little bit differentiated here. But I believe, based on the fact that the vocational expert gave a total for these two jobs that's greater than the whole OES group, that's sufficient to rebut the vocational expert's testimony on its own. And then we have a contrary submission, which, if it was exhibited, would have been the only vocational evidence in the record. Counsel, the difficulty I'm having is under our precedent, if there are two interpretations of the evidence and the ALJ selects one, we are bound by that, aren't we? If the ALJ interprets the evidence and you're saying there's a different interpretation of the evidence, how can we say that the interpretation of the ALJ was wrong if it's an interpretation that's supported by the vocational expert testimony? If there were two different interpretations that were equally supported by the evidence, you're right. It would not be the Court's prerogative to choose between them. But when one of these is flatly contradicted by the numbers from the U.S. Department of Labor, the two aren't in equipoise. And the second set of evidence wasn't even exhibited. Was the evidence of 230,000 jobs presented to the vocational rehabilitation expert in cross-examination? No, Your Honor, it was not. Why not? Because we didn't have that information at the hearing. That's made pretty clear, I believe, in Scheibe, that we don't get the opportunity to voir dire these experts. So he didn't have an opportunity to explain the inconsistency, which you're pointing out now. We had that opportunity in our brief to the ALJ, which the ALJ chose not to exhibit. He chose not to? I don't know if he chose not to. Maybe he simply failed to. But you had the opportunity to cross-examine the expert on this inconsistency at the hearing, correct? We didn't have the time to do that research at the hearing. But that was your – you chose not to do that research or didn't do that research at the hearing and did not allow the opportunity for the expert to be cross-examined and explain what you now raise as an inconsistency, true?  Scheibe doesn't require us to do that. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BEA, SUNG